UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
10/27/2016

| | |
|---|---|
| IN RE: § | |
| JOSE ELIAS SIERRA SR., *et al* § | CASE NO: 15-70603 |
| Debtors § | |
| § | CHAPTER 13 |

MEMORANDUM OPINION
DENYING CONFIRMATION
OF DEBTORS' SIXTH AMENDED CHAPTER 13 PLAN
[*Resolving ECF No. 99*]

I. INTRODUCTION

Pending before this Court is Jose Elias Sierra Sr. (the "***Debtor***") and Norma Alicia Gonzalez's (individually, "***Joint Debtor***," and collectively, the "***Debtors***") Sixth Amended Chapter 13 Plan, which was filed on June 28, 2016. [Case No. 15-70603, ECF No. 99] (the "***Sixth Amended Plan***"). The Debtors seek confirmation of their Sixth Amended Plan, which includes treatment of Debtors' home mortgage claim to be paid in full and pro-rata at 5.5% interest per annum. *Id.* Notably, the Debtors' mortgage is set to mature approximately one year after which the final payment under the plan is due and is subject to a contract interest rate of 17% per annum. [Claim No. 11-1]. Standing in solidarity on the issue, both the Debtors and the chapter 13 trustee ("***Trustee")*** present this Court with a matter of first impression, to wit: can this Court confirm a chapter 13 plan which proposes to pay a mortgage claim on Debtors' principal residence on a pro-rata basis and at a non-contractual rate of interest notwithstanding the fact that the last payment is due on the mortgage is after the date on which the final payment under the

plan is due?  This Court now considers the parameters of the Bankruptcy Code,[1] specifically 11 U.S.C. §§ 1322 & 1325, and the arguments lodged by both the Debtors and the Trustee.

## II.  FINDINGS OF FACT

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052, which incorporates Fed. R. Civ. P. 52, and 9014.  To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.  This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

On November 29, 2015, Debtors filed their original petition under title 11, chapter 13 of the Bankruptcy Code. On December 14, 2015, Debtors filed a list of schedules to supplement their petition.  [ECF No. 13] (the "*Schedules*").  On Schedule A/B, Debtors listed "310 Apollo Dr., Donna, Texas" (the "*Property*") as Debtors' principal residence.  *Id.* at 3.  The Schedules reflect the current value of the Property as $56,280.00.  *Id.*  On Schedule D, Debtors listed Villa Donna Development Corp. ("*Villa Donna*") as the mortgage holder of the note on the Property. *Id.* at 12-13.  Debtors incurred the Mortgage debt on March 28, 2007.  *Id.*  On Schedule D, Debtors indicated that Villa Donna had an $11,000.00 secured, albeit disputed claim.  *Id.*

Contemporaneous to their filing of the Schedules, Debtors filed their original chapter 13 plan which included a provision for the payment of the mortgage payable to Villa Donna in the amount of $11,000.00 at 5.25% per annum.  [ECF No. 15].  On February 16, 2016, Villa Donna filed a proof of claim for the Mortgage in the amount of $14,220.65, listing an interest rate of

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

17%. [Claim No. 11-1]. (the "*Claim*"). On the addendum attached to the Claim, when asked if the loan matures during the Plan, Villa Donna indicated that it does not. *Id.* at 4. However, on the subsequent line, where the form reads "If yes, due date," Villa Donna wrote "note accelerated 10-30-15." *Id.* The attached Deed of Trust states that the mortgage matures on April 1, 2022. [Claim No. 11-1, Ex. 1 at 1] (the "*Mortgage*"). In bold typeface on the addendum, Villa Donna indicated that the "ENTIRE CLAIM TO BE PAID IN PLAN." [Claim No. 11-1 at 4].

Debtors filed their First Amended Chapter 13 Plan ("*First Amended Plan*") on March 7, 2016. [ECF No. 42]. In the First Amended Plan, Debtors proposed treating the Mortgage under Section 4 stating that the amount to be paid was $14, 220.65, pro-rata at 17% per annum. *Id.* at 3. Shortly thereafter on March 17, 2016, Debtors filed their Second Amended Chapter 13 Plan ("*Second Amended Plan*") proposing to treat the Mortgage under Section 8 of the plan to be paid pro-rata at 17% per annum. [ECF No. 49]. Debtors amended the chapter 13 plan three more times all of which treated the Mortgage in the same fashion as the Second Amended Plan. *Compare* [ECF Nos. 64, 73, 86] *with* [ECF No. 49]. The three subsequent amended plans were filed on April 26, 2016, May, 11, 2016, and June 4, 2016, respectively. [ECF Nos. 64, 73, 86]. The plan filed June 4, 2016, came before this Court for confirmation on June 22, 2016. [ECF No. 86] ("*Fifth Amended Plan*"). Throughout this process, Villa Donna has not objected to any version of the Debtors' amended plans.

Initially, during the June 22, 2016 hearing, the Trustee did not recommend confirmation of the Fifth Amended Plan as Debtor's original affidavit indicated that he had not paid all domestic support obligations since the date of filing. Debtors' Counsel indicated that an updated affidavit establishing that the Debtor was current on all domestic support obligations had been

filed with the Trustee.  Debtor testified that he was managing with the budget and was current on plan payments.  Based on the Debtor's testimony, the Trustee recommended confirmation of the Fifth Amended Plan.  No objections to confirmation were filed and Villa Donna did not appear in opposition at the hearing.  The Court questioned the Mortgage's treatment under the Fifth Amended Plan, specifically due to the high interest rate of 17%.  The Court inquired as to whether the Mortgage matured within the life of the Plan.  Debtor's Counsel indicated that he believed the Mortgage matured within the life of the plan, however, did not provide evidence to substantiate that assertion.  The Trustee referenced the addendum attached to Villa Donna's Claim, which states that the Mortgage was accelerated to October 2015.  *See* [Claim No. 11-1].  This Court referenced the same Claim where the documents state that the Mortgage does not mature until April 2022.  *See id.*  The Court expressed concern about the "contradictory" nature of Villa Donna's Claim.  The Court requested Debtor clarify the contradiction on the Claim.  Concerned about the high interest rate and the lack of clarity provided by Debtor on the Claim, this Court denied confirmation of the Fifth Amended Plan.  [ECF No. 93].

In response to the Court's concerns, on June 28, 2016, Debtors filed their Sixth Amended Chapter 13 Plan, which remains pending before this Court.  [ECF No. 99] ("***Sixth Amended Plan***").  The Sixth Amended Plan treats the Mortgage as a pay in full claim to be paid pro-rata, but at 5.5% per annum.  *Id.* at 7.  The Sixth Amended Plan came up for confirmation before the Court on August 16, 2016.  No objections to the Sixth Amended Plan were filed and Villa Donna did not appear in opposition.  Again, the Trustee recommended confirmation of the Sixth Amended Plan.  Debtors' Counsel argued that the Sixth Amended Plan should be confirmed.  Both this Court and the Trustee observed that the Mortgage matures approximately one year after

completion of all payments under the Sixth Amended Plan or April 1, 2022.  *See* [Claim No. 11-1 at 4].  This Court expressed concern that treatment of Villa Donna's Claim under the Plan was proscribed by 11 U.S.C. § 1322(b)(2).  This Court invited Debtors' Counsel and the Trustee to file briefs addressing the issue on or before September 15, 2016.  Both Debtors and Trustee submitted timely briefs.  [ECF Nos. 112, 113].  The Sixth Amended Plan came before this Court for confirmation again on September 22, 2016.  At that hearing, Debtors' Counsel requested additional time to file a supplemental brief, which this Court freely granted.  [ECF No. 117].  On October 6, 2016, Debtors' Counsel filed a supplemental brief again addressing the treatment of the Mortgage under the Sixth Amended Plan.  [ECF No. 119].  Upon receiving Debtors' supplemental brief, this Court considered the parameters of the Code, the briefs submitted and arguments of the parties.

### III.  LEGAL STANDARD

Confirmation of a plan of reorganization in chapter 13 is governed by both 11 U.S.C. §§ 1322, and 1325.  Mandatory plan requirements are governed by § 1322(a), whereas permissive requirements are governed by § 1322(b).  A chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence."  § 1322(b)(2). The Code also provides that "notwithstanding paragraph (2) . . ., [the plan may] provide for the curing of any default within a reasonable time . . . on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due."  § 1322(b)(5).  Notwithstanding the Code's anti-modification provision:

> in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal

residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5).

§ 1322(c)(2). This Court shall confirm a chapter 13 plan when "the plan complies with the provisions of this chapter and with the other applicable provisions of this title." § 1325(a)(1).

### IV.  CONCLUSIONS OF LAW

#### A.  Jurisdiction & Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter. 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012). In the instant case, the Court is considering whether the Debtors' Sixth Amended Plan is confirmable under the Code. As such, this is a core matter as it pertains to the confirmation of a plan in a chapter 13 proceeding. § 157(b)(2)(L); s*ee also In Re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999).[2]

This Court may only hear a case in which venue is proper. 28 U.S.C. § 1408. According to the petition, Debtors reside in Donna, Texas. [ECF No. 1]. Therefore, venue is proper in the United States Bankruptcy Court for the Southern District of Texas, McAllen Division.

#### B.  Constitutional Authority to Enter a Final Order

This Court has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern v. Marshall*, 564 U.S. 462 (2011). *But see Wellness Int'l Network v.*

---

[2] "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."

*Sharif*, 135 S. Ct. 1932, 1938-39 (2015) (holding that parties may consent to jurisdiction on non-core matters).  Having determined that the instant case involves a core matter, this Court acknowledges the issues *Stern* presents.  564 U.S. at 473-74 (holding that "bankruptcy judges may hear and enter final judgments" in core proceedings).  An order denying confirmation of a proposed chapter 13 plan is not a final order and therefore does not implicate the concerns raised in *Stern*.  *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015).  In this case, denying confirmation of Debtors' Plan does not result in a final order.  Thus, this Court concludes that there is no implication of *Stern* regarding its entering of an order denying confirmation of Debtors' Plan.  *C.f. In re Texas Extrusion*, 844 F.2d 1142, 1154-55 (5th Cir. 1988).

**C.  Paying a Mortgage Within the Life of a Chapter 13 Plan Does Not Constitute An Impermissible Modification Under § 1322(b)(2)**

The first task this Court must surmount is to determine whether paying a mortgage claim in full under the Debtors' chapter 13 plan, despite an original maturity date well after the anticipated completion of all payments under the proposed chapter 13 plan, constitutes an impermissible modification in violation of § 1322(b)(2).  The Supreme Court established that § 1322(b)(2) plainly "focuses on the modification of the rights of holders" of mortgage claims.  *Nobelman v. American Sav. Bank*, 508 U.S. 324, 328-29 (1993) (finding that a valuation of the debtor's home "does not necessarily mean that the 'rights' the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim").  The Code does not define the term "rights," which leaves the determination of a mortgage holder's rights to state law.  *Id.* at 329 (quoting *Butner v. United States*, 440 U.S. 48, 54-55 (1979)).  In Debtors' case, Texas law applies as the Mortgage entered into between Villa Donna and Debtors was formed in Texas.  [Claim No. 11-1, Ex. 1].  Villa Donna, as the Claim holder, maintains

several rights that are reflected in the Mortgage. *Id.* Most pertinently, Villa Donna holds the right to repayment of the principal over a fixed term at 17% interest in monthly installments and the right to accelerate the Mortgage upon Debtors' default. *Id.; see also Nobelman*, 508 U.S. at 329 (including the lender's "right to retain the lien until the debt is paid off . . . and the right to bring an action to recover any deficiency remaining after foreclosure"). The rights "bargained for by the mortgagor and the mortgagee . . . are rights protected from modification by § 1322(b)(2)." *Nobelman*, 508 U.S. at 329-30 (quoting *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992)).

In a similar vein, Debtors also maintain rights that were bargained for under the Mortgage. *See* [Claim No. 11-1, Ex. 1]. The Mortgage allows Debtors to prepay the Mortgage without a prepayment penalty. *Id.* at 6. Specifically, the Mortgage provides that the payments will be due on or before the first day of each month "continuing consecutively until April 1, 2022 when the entire unpaid balance of principal and interest shall become due and payable." *Id.* at 1. Further, the Mortgage provides that Debtors' promise to pay Villa Donna "at the place for payment and according to the terms of payment the principal amount plus interest at the rates stated above. All unpaid amounts shall be due by the final scheduled payment date." *Id.* at 2. Explicitly, the Mortgage provides for prepayment, stating that "[o]n any . . . permitted prepayment, any such excess shall be canceled automatically as of the . . . prepayment or, if already paid, credited on the principal of the debt, or if the principal of the debt had been paid, refunded." *Id.* at 6.

Our sister court examined whether paying off a home mortgage during the life of a chapter 13 plan would violate § 1322(b)(2). *In re Gaetje*, 2015 WL 3825972, at *5 (Bankr. S.D.

Tex. June 18, 2015) (holding that when a mortgage "contains a provision specifically allowing full prepayment" early repayment is not an impermissible modification); *see also In re Bellamy*, 126 B.R. 134, 135-36 (Bankr. D. Conn. 1991); *In re Moran*, 121 B.R. 879, 883 (Bankr. E.D. Okla. 1990) (finding that "[i]f [a] mortgage allows pre-payment, the [d]ebtors may exercise this right," notwithstanding § 1322(b)(2)).  As in *Gaetje*, the Mortgage in this case specifically allows the Debtors to prepay prior to the April 2022 maturity date.  *Id.* at * 6 (holding that "there is no impermissible modification of the Note because the very terms of the Note allow for prepayment without a penalty").  Thus, in the instant case, Debtors proposal to pay the entire Mortgage under the plan is not an impermissible modification because Villa Donna's rights are not modified.  Merely exercising a bargained for right of prepayment does not amount to a modification of the terms of a mortgage.  Therefore, if the terms of a mortgage allow a debtor to early repayment, then the chapter 13 plan can provide for prepayment notwithstanding § 1322(b)(2)'s prohibition of modification of other non-prepayment terms of a mortgage.

      **D.**    **Lowering the Mortgage Interest Rate is an Impermissible Modification of Villa Donna's Rights and thus a violation of § 1322(b)(2)**

Although Debtors may elect to pay off the Mortgage during the term of the plan, the inquiry regarding the confirmability of the Sixth Amended Plan does not end there.  This Court must determine if modifying the Mortgage's interest rate results in an impermissible modification under § 1322(b)(2).  The question at issue turns on the interplay between § 1322(b)(2) and § 1322(c)(2); most pertinently, whether prepaying a mortgage under a plan qualifies as a modifiable mortgage where the "last payment on the original payment schedule . . . is due before the date on which the final payment under the plan is due."  *See* § 1322(c)(2).  Here, Debtors seek to pay the Mortgage pro-rata at 5.5% interest per annum contrary to the

contract interest rate of 17% per annum.  *Compare* [ECF No. 99] *with* [Claim No. 11-1].  Neither Debtors nor the Trustee address whether § 1322(c)(2) allows a bankruptcy plan to change the interest rate of a mortgage being prepaid under the plan.  *See generally* [ECF Nos. 112, 113, 119].  Rather, Debtors and the Trustee allege that Villa Donna's failure to object to the Sixth Amended Plan—or any version of the plan thus far—constitutes acceptance of the treatment of the Mortgage.  *See* [ECF No. 113 at 5]; [ECF No. 119 at 4].  Irrespective of those arguments and the lack of any objection by Villa Donna, the issue before this Court is one purely of statutory interpretation, to wit: whether the Court can confirm a plan that modifies the interest rate of a mortgage on Debtors' principal residence that matures outside the life of the plan.  *See In re Divine Ripe, LLC*, 554 B.R. 395, 410 (Bankr. S.D. Tex. 2016) ("The Court has an independent duty to review such compliance [with the Code], irrespective to an objection being made to the Plan's confirmation.").

    The "standard tools of statutory interpretation . . . focus on the language of the statute taken in the context of the Bankruptcy Code."  *In re Lively*, 717 F.3d 406, 409 (5th Cir. 2013) (citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070-71 (2012)). Further, statutory interpretation requires reference to both the specific context of language and the context of the entire statute.  *In re Raygoza*, 2016 WL 4574303, at *5 (Bankr. S.D. Tex. Sep. 1, 2016) (citing *Yates v. United States*, 135 S. Ct. 1074, 1081-81 (2015)).   While interpreting a statute, it is ultimately the court's responsibility to "give words their ordinary construction and provide the statute's intended meaning." *Burnett v. Stewart Title, Inc.*, 432 B.R. 894, 899 (S.D. Tex. 2010).  Courts "follow the plain meaning of a statute unless it would lead to a result so bizarre that Congress could not have intended it." *Demarest v. Manspeaker*, 498 U.S. 184, 190

(1991); *see also Crooks v. Harrelson*, 282 U.S. 55, 59-60 (1930) (finding that "the absurdity must be so gross as to shock the general moral or common sense" in order to interpret a statute contrary to its plain meaning); *In re Guerrero*, 540 B.R. 270, 274 (Bankr. S.D. Tex. 2015) (acknowledging that "[i]f a statute unambiguously expresses one meaning, the analysis ends with a faithful application of that meaning").

The Mortgage is "a claim secured only by a security interest in real property that is the [Debtors'] principal residence." *Compare* [Claim No. 11-1] *with* § 1322(b)(2). All parties concede this fact. Thus, the question is whether § 1322(c)(2) allows the parties to sidestep the anti-modification provision of § 1322(b)(2) and lower the Mortgage's interest rate. Section 1322(c)(2) grants debtors the ability to modify a home mortgage in situations where "the last payment on the original payment schedule . . . is due before the date on which the final payment under the plan is due." This Court finds that the phrase "the last payment on the original payment schedule" is unambiguous and thereby follows Congress's will—namely, prohibiting modification of mortgages in bankruptcy plans. *See In re Bartee*, 212 F.3d 277, 295 (5th Cir. 2000) (holding that § 1322(c)(2) refers to the "final payment" under the original mortgage schedule and not the most recent payment); *In re Perry*, 235 B.R. 603, 608 (S.D. Tex. 1999), *abrogated on other grounds by* 212 F.3d 277 (acknowledging that "courts consistently apply § 1322(c)(2) exclusively to claims that mature prior to or during the term of the Chapter 13 plan"); *In re Dandridge*, 221 B.R. 741, 748 (Bankr. W.D. Tenn. 1998) (reviewing case where the final payment of mortgage payment was due in 2021 outside the bankruptcy plan). Choosing to exercise the right to prepayment, while allowed under the Code, does not alter the Mortgage's original payment schedule. The last payment due under the Mortgage remains April 1, 2022.

[Claim No. 11-1]. Irrespective of what happens during the life of the Debtors' bankruptcy, Debtors will be able to pay the Mortgage until April 1, 2022. Debtors will complete their plan in 2021, one year before the last Mortgage payment is due. [ECF No. 99]. Therefore, as the Mortgage matures outside the life of the plan, § 1322(c)(2) is inapplicable to Debtors' Sixth Amended Plan.

Thus, as Debtors' Mortgage cannot be modified pursuant to the Code, the Mortgage must be paid according to the contract interest rate of 17% per annum. *See In re Gaetje*, 2015 WL 3825972 at *4-5 (holding that modifying an interest rate in a bankruptcy plan constitutes an impermissible modification under § 1322(b)(2)). The Sixth Amended Plan seeks to pay the Mortgage at 5.5% interest per annum, which significantly modifies the contract rate, thereby violating the anti-modification provision of §1322(b)(2). *See* [ECF No. 99]. This Court operates within the parameters set forth by the Code, which the Sixth Amended Plan fails to conform to. This Court shall confirm a plan that "complies with all applicable provisions" of the Bankruptcy Code. § 1325(a)(1). By extension, this Court will not confirm a plan that does not comply with the Code. Therefore, due to the impermissible modification of the Mortgage interest rate, the Court finds that Debtors' Sixth Amended Plan should not be confirmed.

## V. CONCLUSION

Debtors sought to confirm the Sixth Amended Plan—with no opposition from the Trustee or the Mortgagee—which includes Debtors' Mortgage be paid in full, pro-rata, at 5.5% interest per annum during the life of the plan. Since the express terms of the Mortgage allow prepayment, this Court does not take umbrage with the provision seeking to pay the entirety of the Mortgage during the life of the plan. Rather, the Court operates within the parameters set

forth by Congress in the Bankruptcy Code, which expressly prohibits modification of a home mortgage *unless* the "last payment on the original payment schedule" is due before the end of the plan. §§ 1322(b)(2), 1322(c)(2). The Sixth Amended Plan proposes a lower interest rate of 5.5% per annum rather than the Mortgage's contract interest rate of 17% per annum in a situation where the Mortgage's original payment schedule ends on April 1, 2022—approximately one year after which the final payment under the plan is due. Despite the solidarity evinced by Debtors and the Trustee, this Court finds that, although Debtors may pay the mortgage in full during the life of the chapter 13 plan, lowering the interest rate is an impermissible modification and prohibited by § 1322(b)(2). Consequently, confirmation of Debtors' Sixth Amended Plan, [ECF No. 99], is hereby **DENIED** without prejudice to refile a plan consistent with this Memorandum Opinion.

    An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 10/27/2016.

_____
Eduardo V. Rodriguez
United States Bankruptcy Judge